UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| VERNON NOLAN | * | CIVIL ACTION NO. 17-2835 |
| --- | --- | --- |
| | * | |
| | * | SECTION: "B"(1) |
| VERSUS | * | |
| | * | JUDGE IVAN L. R. LEMELLE |
| | * | |
| OMEGA PROTEIN, INC. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

ORDER AND REASONS

Before the Court is the Motion to Compel the Production of Documents and a Supplemental Privilege Log filed by plaintiff Vernon Nolan. (Rec. Doc. 12). The Motion raises the following four issues: 1. Whether Defendant has met its burden to provide a privilege log, 2. Whether the Defendant must produce Plaintiff's recorded statement to him prior to the Plaintiff's deposition, 3. Whether the recorded statements of other employees of the Defendant are protected by the work product doctrine, and 4. Whether the Phillips & Associates Inc.'s Interview Report should be produced. At oral argument, held on October 25, 2017, Defendant's counsel provided further explanation regarding the privileged documents being withheld and counsel for Nolan agreed he was satisfied with the representations. Accordingly and for the following reasons, the Motion to Compel is DENIED as moot in part as to the privilege log, and GRANTED in part as to the remaining issues: Omega shall produce Nolan's statement within 14 days and, in any event, in advance of his deposition; Omega shall produce the employee statements; and Omega shall produce the Phillips Interview Report.

Background

Mr. Nolan filed this Jones Act lawsuit against his employer Omega Protein, Inc. ("Omega") alleging injuries arising from an April 22, 2014, incident onboard a vessel owned and operated by

1

Omega. The only specific allegation regarding the incident is that "While the purse boats were coming together, a co-worker improperly threw the stop line into the press line, causing the press line to contact Plaintiff, injuring him." (Rec. Doc. 1, at ¶ 4.3). He filed this lawsuit on April 3, 2017. Trial is set to begin on May 7, 2018.

Law and Analysis

1. *Plaintiff's Statement*

The parties agree that plaintiff Nolan's statement is subject to disclosure. Indeed, Rule 26(b)(3) provides that "[a]ny party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter." Fed. R. Civ. P. 26(b)(3); Miles v. M/V Mississippi Queen, 753 F.2d 1349, 1351 (5th Cir. 1985) (explaining that a party's statement is "discoverable as of right"). The issue is whether Omega can withhold the statement until after Nolan's deposition.

> The comments to the Federal Rules of Civil Procedure explain that:
>
> Ordinarily, a party gives a statement without insisting on a copy because he does not yet have a lawyer and does not understand the legal consequences of his actions. Thus, the statement is given at a time when he functions at a disadvantage. Discrepancies between his trial testimony and earlier statement may result from lapse of memory or ordinary inaccuracy; a written statement produced for the first time at trial may give such discrepancies a prominence which they do not deserve. In appropriate cases the court may order a party to be deposed before his statement is produced.

Fed. R. Civ. Proc. 26 advisory committee's comments to 1970 amendment. Courts have held that a "defendant may withhold the [plaintiff's] statement until after plaintiff's deposition only if the Court permits defendant to do so, in its *discretion,* upon the particularized showing that defendant must make pursuant to Rule 26(c)(2) or 26(d)."[1] Baggs v. Highland Towing, L.L.C., No. CIV. A.

---

[1] In Baggs, Magistrate Judge Wilkinson observed that the advisory committee notes indicate that disclosure of a party's statement can be delayed only in "appropriate cases" and that "leading commentators on the Federal Rules of Civil

99-1318, 1999 WL 539459, at *3 (E.D. La. July 22, 1999) (emphasis in original). Rule 26(c) protective orders are issued upon a showing of good cause, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). Under Rule 26(d), the Court can order a particular sequence of discovery when the moving party makes a showing that a particular sequence is "for the convenience of the parties and in the interests of justice." Chaney v. Kansas City S. Ry. Co., No. CIV A 06-3469, 2007 WL 2463311, at *1 (E.D. La. Aug. 27, 2007) (quoting Fed. R. Civ. Proc. 26(d)(2)).

As observed by Magistrate Judge Roby,[2] courts have not found good cause to delay production of a plaintiff's statement based on "the suggestion of entitlement to the unrefreshed testimony," where the "plaintiff did not report the accident immediately after the accident," or in order to preserve the "statement for solely impeachment purposes." Monceaux v. Bayou Fleet, Inc., No. CIV.A. 05-2634, 2006 WL 1236055, at *2 (E.D. La. May 5, 2006). For example, in Monceaux, the court found the mere fact that the accident was unwitnessed did not establish good cause to delay production of the plaintiff's statement. Id.; see Bertucci Contracting Co. v. M/V JULIE MARIE, No. CIV.A. 11-1328, 2013 WL 592889, at *3 (E.D. La. Feb. 14, 2013) (finding the plaintiff had not established good cause by alleging that the deponent was the opposing party's only witness to the incident). In Hill v. Hornbeck Offshore Servs., LLC, the accident was unwitnessed and the plaintiff returned to work and did not allege injury until two years later. No.

---

Procedure suggest that 'appropriate cases' may be identified by reference to Fed. R. Civ. P. 26(c)(2)." 1999 WL 539459, at *2.

[2] In Chaney, Magistrate Judge Roby concluded that "it is this court's opinion that the decisions which do [delay production of the plaintiff's statement until after a deposition has been taken] are based upon a general state court practice and not the standard which we are required to apply as noted by Fed. R. Civ. Proc. 26." 2007 WL 2463311, at *3.

CIV.A. 10-2121, 2011 WL 2550510, at *3 (E.D. La. June 27, 2011). The court found these facts were insufficient to establish good cause to delay production of the plaintiff's statement. Id. In Vinet v. F & L Marine Management, Inc., Magistrate Judge Wilkinson allowed the plaintiff to receive his statement prior to his deposition, finding the defendant had not established good cause by arguing that the facts and circumstances surrounding the plaintiff's unwitnessed accidents raised questions as to their authenticity. 2004 WL 3312007, at *2. The court found the defendant's arguments were conclusory and unsubstantiated and underscored that "[c]ivil discovery is not a game of ambush." Id. The court went on to explain that "[t]o conclude that a witness would lie because his accidents were unwitnessed or would testify truthfully only because of the threat that his prior statements might contradict him is simply stereotyping, as is the assumption that his post-accident statements are the only 'true' versions of the facts." Id. at *3.

Yet not all cases have demanded a particularized showing of good cause. Defendants cite Complaint of L.L.P.&D. Marine, Inc., where the court observed that "[j]udges in this District generally follow the practice of requiring the production of statements only *after* a party has been deposed, in order to maintain the integrity of the statement." No. CIV. A. 97-1668, 1998 WL 113937, at *1 (E.D. La. Mar. 11, 1998). The court put the burden on the plaintiff to show why he should be allowed his statement prior to the deposition and found he had not met that burden. Omega also cites Crenshaw v. R & B Falcon Drilling, USA, Inc. where Judge Fallon reviewed the plaintiff's statement *in camera* and ordered that plaintiff was not entitled to the statement prior to his deposition. No. CIV.A. 02-3699, 2003 WL 21010746, at *1 (E.D. La. May 1, 2003). Judge Fallon provided no explanation for his ruling. Id. And in Atlantic Sounding Co. v. Sullivan, the district court found sufficient the plaintiff's demand to examine the unrefreshed recollection of the defendant and Jones Act counterclaimant. No. CIV.A. 04-0508, 2004 WL 1737933, at *2–3 (E.D.

4

La. July 30, 2004). Finally, Omega cites an unreported discovery order issued by Magistrate Judge Shushan in 2012 in a case where Omega was also the defendant. Reels v. Omega Protein, Inc., Civ. A. No. 11-2593, Rec. Doc. 19 (E.D. La. Apr. 18, 2012). There, Omega alleged that the plaintiff's statement materially contradicted the description of the accident in the complaint and discovery responses. Magistrate Judge Shushan ordered that plaintiff's deposition proceed, that plaintiff be provided his recorded statement after his deposition, that plaintiff and his counsel be allowed a break to review the statement privately, and that plaintiff be allowed to continue his deposition thereafter.

Here, Omega submits that it should be allowed to delay disclosure of Nolan's statement until after his deposition because doing so would serve the interests of justice. Omega points to purported examples of Nolan's changing story regarding the alleged accident and insists it must be allowed to depose him so that he does not conform his deposition testimony to the recorded statement. For example, Omega points out that the Complaint describes the incident as follows: "While the purse boats were coming together, a co-worker improperly threw the stop line into the press line, causing the press line to contact Plaintiff, injuring him." A report completed by Nolan on August 25, 2014, describes "hurt neck and back in purse boat." The Court finds no inconsistencies in these statements. Omega also points to the Coast Guard description of the incident: "Fisherman was helping retrieve a large net with fish. As the 2 purse boats got closer the stop line was tangled in the hydraulic reel. Fisherman grabbed the line and ducked beneath it to avoid being pushed overboard. When he stood back up he felt pain in his neck and back." To the extent this is inconsistent with the Complaint, counsel for Omega confirmed at oral argument that the Coast Guard account would have been based off of materials submitted by Omega and not an interview with Nolan. Thus, any inconsistencies cannot be attributed to Nolan. Omega further

5

points to Nolan's interrogatory responses as further evidence of inconsistencies. However, the Court finds the interrogatory response to be nearly identical to the description provided in the Complaint.[3] Finally, Omega points out that an important issue in this case is the extent of Nolan's pre-existing conditions and that this topic is discussed in his recorded statement. It says there is evidence that Nolan has been untruthful on this point because when he completed Coast Guard CG-719K form for the 2013 season he marked "Yes," he had a previous back surgery or injury, but when completing this form for the 2014 season, he marked "No." While there is an inconsistency in the boxes Nolan checked off, the Court is not convinced at this stage that the inconsistency is evidence of untruthfulness.

The Court also requested that Omega provide a copy of Nolan's statement for *in camera* review to better determine the existence of discrepancies. There is at least one inconsistency with the recorded statement and the Complaint's description of the event. However, the Court finds this inconsistency and the inconsistency on the Coast Guard medical form insufficient to establish good cause to delay production of Nolan's statement. As the comments to Rule 26 observe, such differences could result from other reasons, for example, a lapse in memory. While in the appropriate circumstances, this Court would delay production of a statement, the Court finds here that the interests of justice would not be served by such delay. Not only do the inconsistencies fail to rise to a level suggesting an intent to deceive, but the Court also takes note that Nolan has only a ninth grade education. The comments to the Rules caution that a party making a statement without legal representation is at a disadvantage because he or she does not know the legal consequences of the statements made. This concern is heightened given Nolan's education level.

---

[3] The interrogatory response states that "Plaintiff was injured at work when the purse boats were coming together and a co-worker improperly threw the stop line into the press line causing the press line to contact Plaintiff." (Rec. Doc. 14, at 7).

The Court finds that the interests of justice are served by production of the statement in advance of Nolan's deposition.

2. *Work Product Doctrine and Defendant's Employee Statements*

The work-product doctrine protects from discovery documents and tangible things "prepared . . . in anticipation of litigation." United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). Codified at Federal Rule of Civil Procedure 26(b)(3),[4] the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. See Kansas City S. Ry. Co. v. Nichols Const. Co., No. CIVA 05-1182, 2007 WL 2461014, at *2 (E.D. La. Aug. 27, 2007). For this privilege to apply, litigation need not be imminent "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542–43 (5th Cir. 1982)). "[M]aterials assembled in the ordinary course of business," are excluded from work-product materials. El Paso, 682 F.2d at 542.

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted). "[T]he burden of showing that documents were

---

[4] "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. Proc. 26(b)(3)(A).

prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect the documents from discovery." Id.

For example, in Piatkowski, the defendant sought to protect from disclosure certain witness statements taken after the accident and after the lawsuit was filed. Id. The statements had been taken by a company retained by the defendant to investigate the plaintiff's accident. Id. at *3. There was no evidence showing whether the claims investigator was routinely hired to investigate on scene accidents. Id. The court deduced that the investigating company "provides services similar to that of an insurance company; it adjusts claims and resolves disputes short of litigation." Id. The court explained that "courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." Id. at *2. The court concluded that the defendant had failed to demonstrate that "the primary motivating purpose in securing the witness statements was in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resolvable claim." Id.

Here, Omega insists that the statements of Lee Morris and Kevin Verrett[5] were created in anticipation of litigation. Omega points out that as of October 31, 2014, Nolan had already obtained extensive treatment for his injuries and says that it saw the "writing on the wall." Indeed, Nolan underwent an anterior cervical discectomy and fusion surgery for levels C4-C6 of his cervical spine prior to October 31, 2014. An e-mail from registered nurse Erin Ervin-Dumas to Jeanne Miller (with Omega) dated September 4, 2014, explains that Nolan was complaining of extreme neck pain of 9 on a 10 point scale. In its brief, Omega insists that future litigation is the reason it retained Phillips & Associates to take and transcribe Morris and Verrett's statements. However, at oral argument, counsel for Omega conceded that an adjuster like Phillips is typically retained at

---

[5] Plaintiff also seeks the statement of Patrick Ryan. Counsel clarified at oral argument that Ryan was not a witness, but he may have been present for the other interviews. There is no separate Ryan statement.

the end of every fishing season to conduct witness interviews for any accidents where the injured seaman is still out of work. Counsel explained that the interviews are conducted at this time because at the end of the season, the fishermen typically disperse and may be difficult to track down. While the possibility of future litigation may be part of the reason why the end of season interviews are conducted, it appears that the interviews are more of a standard practice in the ordinary course of business than an action taken in active anticipation of a lawsuit. As Nolan argues in reply, Omega has failed to present actual evidence (in the form of an affidavit or otherwise) that the primary purpose behind the interviews was anticipation of litigation. Omega's counsel admitted that his firm was not retained to handle the matter until after the lawsuit was filed. There is no evidence that Omega's in-house counsel was involved in an assessment of Nolan's case. The Court finds that here, like the company in Piatkowski, Omega has failed to demonstrate that "the primary motivating purpose in securing the witness statements was in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resolvable claim." 2000 WL 1145825, at *2. Accordingly, the statements must be produced.

3. *Phillips & Associates Inc.'s Interview Report*

Plaintiffs also ask that a 2014 Cut Out Interviews Report Submitted to Omega by Philips & Associates, Inc." be produced. At oral argument, counsel for both sides agreed that this report was subject to the same analysis as the employee statements above. Accordingly, for the same reasons stated above, the Court finds that the Phillips Report must be produced (with irrelevant information redacted).

## Conclusion

For the foregoing reasons, the Motion to Compel is DENIED as moot in part as to the privilege log, and GRANTED in part as to the remaining issues: Omega shall produce Nolan's

statement within 14 days and, in any event, in advance of his deposition; Omega shall produce the employee statements; and Omega shall produce the Phillips Interview Report.

New Orleans, Louisiana, this  1st  day of November, 2017.

                                              Janis van Meerveld
                                      United States Magistrate Judge